## Burtis vs. Doughty.

*In the matter of the Estate of* SAMUEL STILWELL, *deceased.*

THE testator directed the sale of certain real estate, and then gave one half of the proceeds to S. S., a nephew; one eighth to S. S., another nephew; one eighth to the executor, "to be by him held in trust and invested, and the interest thereof paid to M. D. and his heirs;" another eighth to the executor "to be by him held in trust and invested, and the interest thereof paid to E. D., and his heirs," and the remaining one eighth to the executor "to be by him held in trust and invested, and the interest paid to W. B. and his heirs."—*Held,* that it was the intention that the executor should hold the several shares in trust for the parties named, during life, with remainder to their children.

The word "heirs" will not be interpreted as a word of limitation, if the intention be apparent to use it in another sense. The appointment of a trustee and a direction to pay the interest and keep the principal invested, are such circumstances as in contrast with other dispositions of the will, operate to show that a bequest in favor of A. and his heirs, was not intended as an absolute legacy to A.

There is no rigid technical rule governing the interpretation of wills   The use of words, whether scientific or not, in their ordinary signification must be intended; but, if by the employment of interpretative language, or by the insertion of other provisions, it can be seen that those terms have been employed in a signification different from their ordinary sense, the purpose of the testator will be carried out.

THE SURROGATE.—This will, which has already been before me for construction, again requires judicial interpretation, on the final distribution of the estate in consequence of the decease of the testator's widow.   By one of the clauses of the will, the testator directs the sale of number fifteen James Slip, after the decease of his wife Elizabeth, and then disposes of the proceeds as follows :—" I do give and bequeath one half of the nett proceeds of such sale to Samuel Stilwell, of Schoharie county, the son of my brother Thomas, deceased. *Item*, I give and bequeath to Stephen Stilwell, of Broome county, the son of my brother Thomas, one eighth part of the nett proceeds of the sale of the store, &c. *Item*, I give and bequeath to Samuel S. Doughty, the one eighth part of the nett proceeds of the sale of the store, &c., to be by him held in trust and invested, and the interest thereof paid to Moses Dodd and his heirs. *Item*, I give and bequeath to Samuel S. Doughty, the one eighth part of the nett proceeds of the sale of the store, &c., to be by him held in trust and invested, and the interest thereof paid to Edward Dodd of the city of Newark, and his heirs.   *Item*, I give and bequeath to Samuel S. Doughty the remaining eighth part of the nett proceeds of the sale of the store, &c., to be by him held in trust and invested, and the interest thereof paid to William Burtis, of the town of Newtown, Queen's county, Long Island, and to his heirs."   Moses Dodd is living and has children, none of whom are of age. William Burtis is living and has children, all of whom are of age.   Edward Dodd died after the testator, leaving a number of children under age.

Was it the design of the testator to vest the last three legacies in the parties named absolutely?   No doubt a direct gift

to A. and his heirs vests the title in A., the term heirs generally and primarily expressing limitation and not purchase. But the ordinary sense of any technical term may be so controlled by the context as to change its signification. This very word " heirs" has often been used inaccurately, so as to render it necessary to divorce it from its usual signification in order to conform to the manifest intention of the testator. If there be indications on the face of the will that it was used as a word of purchase, for example, as meaning *children*, then its technical purport must give way and it will be interpreted as a word of purchase. (*Crawford* vs. *Trotter*, 4 *Madd. R.*, 361.) The modern inclination is undoubtedly to construe a devise to A. and his children as amounting to a devise to the former for life with remainder to the children, and this disposition is particularly shown in respect to bequests of personalty. (*Morse* vs. *Morse*, 2 *Simon*, 485 ; *North* vs. *Martin*, 6 *Id.*, 266 ; *French* vs. *French*, 11 *Simon*, 257; *Bain* vs. *Lescher*, *Ib.*, 397; *Robinson* vs. *Hunt*, 4 *Beav.*, 450 ; 2 *Jarman on Wills*, *p.* 330, *note k.*, *p.* 313.) I do not consider it necessary to discuss these cases with any particularity, but only refer to them for the purpose of showing the leaning or tendency, as to legacies, in favor of the general intention of the will and against a technical construction. The question now before me is whether the testator by the use of the word " heirs," intended to express the nature of the estate or inteest of Burtis and the Dodds in the legacy as absolute, or to point out a class of persons who should take with them, or after them. This is to be determined by the legal signification of the term, unless another meaning be apparent. As to the legacy to Burtis, the direction is to pay the interest to him " and to his heirs." The word " to" is not contained in the previous legacies, but although its use has not been thought to be indifferent in a case of this kind, (2 *Jarman on Wills*, *p.* 313,) I place no stress upon it here. But it is observable in the first place, that there is a marked difference between these three legacies out of the proceeds of this land, and those which immediately precede them, the latter being given to

the legatees directly and without even words of limitation, and the former being placed in trust. This difference raises a fair doubt whether the word " heirs" was used as a term of limitation, especially in view of the trust. The fund is to be held and invested by the trustee, and of course an immediate payment was not intended, for in that case no trustee would have been necessary. In *Vaughan* vs. *The Marquis of Headfort*, 10 *Simon*, 639, where there was a legacy to H. " and his children, to be secured for their use," it was determined that H. was entitled for life, with remainder to his children, the life estate of the former being implied from the words which implied a trust. It is fair to argue from the interposition of trustees, (*Jesson* vs. *Wright*, 2 *Bligh R.*, 1820, 1,) that the testator did not mean the legatees to receive the uncontrolled disposition of the legacy, and although this cannot restrain the right of the " heirs" to the capital, there being no limitation over as to their interest, it can be made to operate on the estate of the first taker so as to limit him to a life-estate. In *Morse* vs. *Morse*, a case above cited, a similar deduction seems to have been drawn from the appointment of trustees. But it must not be overlooked, also, that the gift to the first named legatees relates only to the interest. There is no gift to them of the principal unless it is to be implied. Now, though ordinarily a gift of the interest without any restriction as to time, passes the principal even though there be a trust, the reason of the rule exists in there being no qualification as to the time of enjoyment, which therefore must be in perpetuity ; but if other objects are named to enjoy the interest, then there is a restriction as to time, and the reason of the rule ceasing, an absolute estate will not be implied. The unqualified ownership is not, in the first instance, given to the first taker, and it cannot be implied in the face of a trust and a direction to pay the interest to his " heirs." The word " heirs" in relation to personal property, is often construed to intend next of kin or children, and if the latter expressions had been used in these clauses of the will, there could have been no question as to the proper construction. I think there is no

doubt as to the meaning of these provisions as they stand. There is no rigid technical rule governing the interpretation of wills. Of course the use of terms, whether scientific or not, in their ordinary signification must be intended, or otherwise we are left to mere conjecture; but if by the employment of interpretative language, or by the insertion of other provisions, it can be seen that those terms have been employed in a signification different from their ordinary sense, the purpose of the testator will be carried out. The marked manner in which the testator in this case has directed three eighths of the proceeds of this land to be held in trust and invested, and the interest paid, satisfies me he did not mean the first *cestui que trusts* to have any more than the interest, and as that intention can be effectuated by declaring them entitled only to a life interest, it is the duty of the court so to interpret the will. As no limitation exists in relation to the payment of the interest to the " heirs," an absolute estate in them must be implied—that is, the decree must provide for a life estate in the parents, with remainder to the next of kin.